IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NOVA HOLDING CLINTON COUNTY, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br>Case No. 09-11081 (KG)<br><br>(Jointly Administered) |

## DECLARATION OF WAYNE P. WEITZ OF GLASSRATNER ADVISORY & CAPITAL GROUP LLC

Wayne P. Weitz, being dully sworn, declares as follows:

1. I am a Senior Managing Director of GlassRatner Advisory & Capital Group LLC ("GlassRatner"), a financial advisory firm specializing in restructuring with offices located at 424 Madison Avenue, New York, New York 10017. I submit this Affidavit in support of the application (the "Application")[2] of the Official Committee of Unsecured Creditors ("Committee") of Nova Holding Clinton County., et al. (collectively, the "Debtors) for an order authorizing the employment and retention of GlassRatner as financial advisors for the Committee. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[3]

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Nova Holding Clinton County, LLC, a Delaware limited liability company (9944); Nova Biofuels Clinton County, LLC, a Delaware limited liability company (9809); Nova Holding Seneca, LLC, a Delaware limited liability company (9237); Nova Biofuels Seneca, LLC, a Delaware limited liability company (9222); Nova Holding Trade Group, LLC, a Delaware limited liability company (9278); Nova Biofuels Trade Group, LLC, a Delaware limited liability company (9269); NBF Operations, LLC, a Delaware limited liability company (8450); Nova Biosource Technologies, LLC, a Texas limited liability company (4403); Biosource America, Inc., a Texas corporation (7542); and Nova Biosource Fuels,Inc., a Nevada corporation (8450).

[2] Unless otherwise defined, capitalization terms used herein shall have the meanings ascribed to them in the Application.

[3] Certain of the disclosures herein relate to matters within the knowledge of other professionals at GlassRatner and are based on information provided by them.

## QUALIFICATIONS OF PROFESSIONALS

2.  GlassRatner was founded in 2001 and is a specialty consulting firm with expertise in financial restructurings. Today, GlassRatner is a private firm that employs approximately 40 professionals.

3.  GlassRatner provides a broad range of corporate advisory services including, general financial advice; capital raising; valuations; and financial restructuring.

4.  GlassRatner's professionals have extensive experience working with financially troubled companies in complex financial restructurings both in and out of Chapter 11. These professionals have advised debtors, creditors, equity constituencies and government agencies in nearly two hundred (200) restructurings.

## DISINTERESTEDNESS OF PROFESSIONALS

5.  To the best of my knowledge, information and belief, insofar as I have been able to ascertain after due inquiry, neither I, GlassRatner, nor any principal or professional employee of GlassRatner (a) is related professionally to the Debtors, their creditors or any other party in interest herein, the United States Trustee or anyone employed in the United States Trustee's office, or (b) has any connection with or holds or represents any interest adverse to the Debtors, their estates, their creditors or any other party in interest herein or their respective attorneys in the matters for which GlassRatner is proposed to be retained, except as described below.

6.  GlassRatner has in the past worked with, continues to work with, and has mutual clients with, certain law firms who represent parties-interest in these cases. None of these engagements or relationships relates to these Chapter 11 cases.

7. GlassRatner in the past has had commercial or professional relationships, and may have commercial or professional relationships, and may in the future have commercial or professional relationships directly or indirectly with customers, competitors, and creditors of the Debtors. As described below, however, GlassRatner has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for any significant creditors, equity security holders, or insiders in such related matters.

8. Toward that end, GlassRatner has researched its client database to determine whether it had any relationships with (i) the Debtors and their affiliates; (ii) the Debtors' directors and officers as disclosed; (iii) the Debtors' secured lenders; (iv) the Debtors' twenty (20) largest unsecured creditors; and (v) the Debtors' equity holders (collectively, the "Interested Parties").

9. To the best of my knowledge, GlassRatner's research did not reveal any fact or situation that would represent a conflict of interest for GlassRatner with regards to the Debtors. Despite the efforts described above to identify and disclose GlassRatner's connections with parties-in-interest in these cases, because the Debtors are a large enterprise with hundreds of creditors and other relationships, GlassRatner is unable to state with certainty that every client representation or other connection has been disclosed.[4] If GlassRatner discovers additional information that requires disclosure, GlassRatner will file supplemental disclosures with the Court as promptly as possible.

---

[4] Indeed, GlassRatner believes it is unlikely that any restructuring firm with the expertise necessary to advise the Committee in these Chapter 11 cases would have no relationships with any Debtors' creditors or other parties-in-interest in unrelated matters.

10. To the best of my knowledge, GlassRatner has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, these Chapter 11 cases. If this Court approves the proposed employment of GlassRatner by the Committee, GlassRatner will not accept any engagement or perform any service in these cases for any entity or person other than the Committee. GlassRatner may, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or parties-in-interest in these Chapter 11 cases, <u>provided, however</u>, that such services do not and will not relate to, or have any direct connection with these Chapter 11 cases.

11. I am not related or connected to and, to the best of my knowledge, no other professional of GlassRatner is related or connected to any United States Bankruptcy Judge or District Judge for the District of Delaware or the United States Trustee for the District of Delaware or to any employee in the office thereof.

12. To the best of my knowledge, information and belief, GlassRatner does not have or represent any interest materially adverse to the interest of the Debtors, or of any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or any investment banker for any securities. To the extent that any information disclosed herein requires amendment or modification upon GlassRatner's completion of further analysis, or as additional information becomes available to it, a supplemental affidavit will be submitted to the Court.

## SERVICES TO BE PROVIDED

14. The Committee has advised GlassRatner that it desires to retain GlassRatner to provide such professional services as GlassRatner, counsel and the Committee find mutually agreeable and which may include the following:

   i.) Assist the Committee in connection with its assessment of the Debtors' cash and liquidity requirements, as well as the Debtors' financing requirements;

   ii.) Assist the Committee in connection with its monitoring of the Debtors' financial and operating performance, including their current operations, monthly operating reports, and other financial and operating analyses or periodic reports as provided by management or the Debtors' financial advisors;

   iii.) Assist the Committee in connection with its evaluation of the Debtors' business, operational and financial plans, both short-term and long-term, including with respect to actual results versus forecast, capital expenditure requirements, and cost reduction opportunities;

   iv.) Assist the Committee in connection with its evaluation of the Debtors' statements of financial affairs and supporting schedules, executory contracts and claims;

   v.) Assist the Committee in connection with its evaluation of the Debtors' operating structure, business configuration and strategic alternatives;

   vi.) Assist the Committee in connection with its evaluation of restructuring-related alternatives for the Debtors;

   vii.) Assist the Committee in connection with the Committee's restructuring or reorganization-related negotiations including analysis, preparation or evaluation of any plan(s) of reorganization proposed by the Debtors, the Committee or a third party;

   viii.) Assist the Committee in connection with its analysis of issues related to claims filed against the Debtors including reclamation issues, administrative, priority or unsecured claims, case litigation and contract rejection damages;

ix.) Assist the Committee in its evaluation of auction procedures or sale transactions that may take place, including with respect to the Committee's evaluation of bids, establishment of bid procedures, identification of additional potentially interested parties for the Debtors' assets, negotiation of asset purchase agreement provisions including working capital adjustments, valuation issues and other related matters;

x.) Consistent with the scope of services set forth herein, attend and participate in hearings before the Bankruptcy Court;

xi.) Assist the Committee, where appropriate, in its analysis of the books and records of the Debtors in connection with potential for recharacterization of debt or recovery of funds to the estate from voidable transactions including related party transactions, preference payments and unenforceable claims; and

xii.) Provide such other related services as may be requested in writing by the Committee and as agreed to by GlassRatner.

## **COMPENSATION OF PROFESSIONALS**

15. The customary hourly rates of GlassRatner's professionals are:

| | |
|---|---|
| Principals/Managing Directors | $350-$550 |
| Managers/Directors | $200-$300 |
| Associates/Analysts | $150-$200 |

16. GlassRatner will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services and will file all appropriate applications for allowances of compensation and expenses with the Court in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and orders of the Court. The applications will set forth in reasonable detail the services performed, the professional persons providing such services, and the time spent.

17. This compensation arrangement is consistent with and typical of arrangement entered into by GlassRatner and other financial advisory firms with respect to the rendition of

similar services to clients such as the Committee, both in and out of Chapter 11. GlassRatner has not shared or agreed to share any of its compensation with any other person, other than a principal, professional or employee of GlassRatner, as permitted by section 504 of the Bankruptcy Code. The proposed engagement of GlassRatner is not prohibited by Bankruptcy Rule 5002.

19. GlassRatner requests its retention be effective as of April 20, 2009.

*Wayne P. Weitz*
Wayne P. Weitz

Sworn to before me this
15th Day of May, 2009

/s/

Notary Public
*A. Cheryl McMillan*

Notary Public, State of GEORGIA
No. _____
Qualified in FULTON County
Commission Expires OCT 14, 20 12

A. CHERYL MCMILLAN
NOTARY PUBLIC
FULTON COUNTY, GEORGIA
MY COMMISSION EXPIRES OCTOBER 14, 2012

PAC 916341v.1