IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NOVA HOLDING CLINTON COUNTY, LLC, *et al.*,[1] | : | Case No. 09-11081 (KG) |
| | : | (Jointly Administered) |
| Debtors and Debtors-in-Possession. | : | |
| | : | **Re: Docket No. 181** |

## ORDER AUTHORIZING (i) THE SALE OF THE CLINTON ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

This matter coming before the Court on the *Motion of Debtors for Entry of Orders under 11 U.S.C §§ 105(a), 365 and 503 and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and 9014: (I) (A) Approving Bidding and Auction Procedures for the Sale of All Assets of the Debtors; (B) Approving Bidding Incentives for Clinton County Bio Energy, LLC, the Clinton Stalking Horse Bidder; (C) Approving Notice Procedures for the Solicitation of Bids, an Auction, and the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (D) Scheduling an Auction for the Sale or Sales of All or Substantially All of the Debtors' Assets; (II) Approving the Sale or Sales of All or Substantially All of Debtors' Assets, Including, Without Limitation, to the Clinton Stalking Horse Bidder and Approving The Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Sale Motion")[2] seeking, *inter alia*, the authority to sell substantially all of the Clinton Assets to

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Nova Holding Clinton County, LLC (9944); Nova Biofuels Clinton County, LLC (9809); Nova Holding Seneca, LLC (9237); Nova Seneca, LLC (9222); Nova Holding Trade Group, LLC (9278); Nova Biofuels Trade Group, LLC (9269); NBF Operations, LLC (8450); Nova Biosource Technologies, LLC (4403); Biosource America, Inc. (7542); and Nova Biosource Fuels, Inc. (8450).

[2] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Sale Motion or the Clinton Asset Purchase Agreement.

131655.01602/21805257v.4

Clinton County Bio Energy, LLC (the "Clinton Purchaser") and seeking authority to have Clinton sell substantially all of its assets to the Clinton Purchaser pursuant to the asset purchase agreement attached to the Sale Motion as *Exhibit B* (as it may be amended and including, without limitation, all other documents, agreements, and instruments containing evidencing such agreement at such *Exhibit B*, the "Clinton Asset Purchase Agreement"); and this Court having entered an order dated August 19, 2009 (the "Procedures Order") authorizing, *inter alia*, the Debtors to conduct, and approving the terms and conditions of, the Auction to consider higher or otherwise better offers for the Clinton Assets and the Clinton Subject Contracts; and the Court having reviewed the Sale Motion, and all other papers filed with the Court relating thereto and having considered the statements of counsel with respect to the Sale Motion at the Sale Hearing; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. §157(b), (iii) notice of the relief sought in the Sale Motion and the Sale Hearing was sufficient under the circumstances, and no further notice need be given; (iv) a sound business purpose exists to grant the relief contained herein, and (v) there is good cause to waive the ten-day stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Court having determined that the legal and factual bases set forth in the Sale Motion, the other papers filed by the Debtors and at the Sale Hearing establish just cause to grant the relief ordered herein;

IT IS HEREBY FOUND AND DETERMINED THAT:

## I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.     This Court has jurisdiction and authority to hear and determine the Sale Motion pursuant to 28 U.S.C. §§1334 and 157(b)(2)(A) and (N). Venue of these cases in this District is proper under 28 U.S.C. §1409. The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.

B.     This "Sale Order" constitutes a final order within the meaning of 28 U.S.C. §158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.     The Procedures Order was entered on August 19, 2009, under which, among other things, this Court approved certain notice and bidding procedures for the Sale Hearing. The Procedures Order provided that it was immediately effective upon entry, and such Order is a final and non-appealable order and remains in full force and effect.

D.     As evidenced by the affidavits of service filed with the Court, proper, timely, adequate and sufficient notice of the Sale Motion and the Sale Hearing has been provided in accordance with Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014 and in compliance with the Procedures Order. Notice of the Sale Hearing and related matters was also published in the *Chicago Tribune*. The Debtors provided due and proper notice of the sale, and assumption and assignment of each contract and lease (and related Cure Amounts, if any) listed in the

---

[3] Findings of Fact shall be construed as conclusions of law, and conclusions of law should be construed as findings of fact when appropriate. See Fed. R. Bank. P. 7052. Any statements of this Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference in this Sale Order.

Clinton Assumption and Assignment Notice to each non-debtor party to such contract or lease. The Debtors further provided due and proper notice of the Sale to any claimant or potential claimant under any Environmental Laws. Such notice was sufficient and appropriate under the circumstances. No other or further notice of the Sale Motion, the Sale Hearing, the assumption and assignment of the Debtors' contracts and leases under the Clinton Asset Purchase Agreement or the Clinton Subject Contracts, or the entry of this Sale Order is necessary or shall be required.

E. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities as outlined in the Sale Motion and the Procedures Order.

F. The Debtors have demonstrated a sufficient basis and the existence of compelling circumstances requiring it to enter into the Clinton Asset Purchase Agreement and sell the Clinton Assets on the terms outlined therein under section 363 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their creditors, and their estates.

G. The Debtors and their professionals have complied, in good faith, in all respects with the Procedures Order. As demonstrated by the evidence adduced at the Sale Hearing, the Debtors: (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offers to acquire the Clinton Assets and the Clinton Subject Contracts, and (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Clinton Assets and the Clinton Subject Contracts. Additionally, the Debtors have, under the circumstances, adequately and appropriately marketed the Clinton Assets and the Clinton Subject

Contracts through, *inter alia*, the dissemination of information regarding the Clinton Assets and the Clinton Subject Contracts to interested purchasers.

H.  The offer of the Clinton Purchaser, upon the terms and conditions set forth in the Clinton Asset Purchase Agreement, including the form and the total consideration to be realized by the Debtors pursuant to the Clinton Asset Purchase Agreement, (i) is the highest and best offer received by the Debtors, (ii) is fair and reasonable, (iii) is in the best interest of the Debtors, their creditors and their estate, (iv) constitutes full and adequate consideration and reasonably equivalent value for the Clinton Assets, and (v) constitutes reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act and fair consideration under the Uniform Fraudulent Conveyance Act.

I.  On September 16, 2009, as adjourned to September 22, 2009, the Debtors conducted the Auction with respect to the Clinton Assets in accordance with the Procedures Order entered by the Court. The Auction afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer than that reflected in the Clinton Asset Purchase Agreement. Upon conclusion of the Auction for the Clinton Assets, the Debtors determined that the Clinton Asset Purchase Agreement constituted the highest and best offer for the Clinton Assets and constituted a valid and sound exercise of the Debtors' business judgment.

J.  The Debtors have demonstrated compelling circumstances and a sufficient and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization. There is a substantial risk of deterioration in value and creditors' recoveries would be significantly diminished if the Sale is not consummated immediately.

K.  The Clinton Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code, and is entitled to the protections of Bankruptcy Code sections 363(m) and

363(n) with respect to the Clinton Assets. The Clinton Asset Purchase Agreement was negotiated and entered into in good faith, based upon arm's length negotiations and without collusion or fraud of any kind.

L. The Debtors have full power and authority to execute the Clinton Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the Clinton Assets by the Debtors has been duly and validly authorized by all necessary action of the Debtors. No consents or approvals other than those provided for in the Clinton Asset Purchase Agreement are required for the Debtors to consummate the transactions described in the Clinton Asset Purchase Agreement.

M. The terms of the Clinton Asset Purchase Agreement are fair and reasonable and the transactions contemplated therein are in the best interests of the Debtors' estates.

N. The Clinton Purchaser would not have entered into the Clinton Asset Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if either (i) the Sale to the Clinton Purchaser was not free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever, except those expressly assumed by the Clinton Purchaser in the Clinton Asset Purchase Agreement, or (ii) the Clinton Purchaser would, or in the future could, be liable for any of such interests, liens, claims and encumbrances, including, but not limited to, any claims against the Debtors based upon successor or vicarious liability or otherwise.

O. The Debtors may sell the Clinton Assets free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever, except as otherwise provided in the Clinton Asset Purchase Agreement, because, in each case, one or more of the standards set forth in Bankruptcy code section 363(f)(1)-(5) has been satisfied. Those non-Debtor parties with

interests in the Debtors' assets who did not object, or who withdrew their objections, to the Clinton Sale or the Sale Motion are deemed to have consented to the Clinton Sale pursuant to Bankruptcy Code section 363(f)(2). Those non-Debtor parties with interests in the Debtors' assets, who did object, fall within one or more of the other subsections of Bankruptcy Code section 363(f). Accordingly, all non-Debtor parties having liens, claims, encumbrances or interests of any kind or nature whatsoever against or in any of the Clinton Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such liens, claims, encumbrances or interests against the Clinton Assets, the Clinton Purchaser or any of its assets, property, successors or assigns.

P.  The transfers contemplated by the Clinton Asset Purchase Agreement do not and shall not subject the Clinton Purchaser to any liability for claims against the Debtors by reason of such transfers under the laws of the United States, any state, territory or possession thereof, including claims relating to the operation of the Debtors' business before the Closing Date, except as specifically provided in the Clinton Asset Purchase Agreement.

Q.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full. The transfer of the Clinton Assets to the Clinton Purchaser shall be a legal, valid and effective transfer of the Clinton Assets and the Clinton Subject Contracts and, except for the Assumed Liabilities, shall vest the Clinton Purchaser at Closing with all right, title and interest of the Debtors in and to the Clinton Assets, free and clear of all claims (as defined in Section 101(5) of the Bankruptcy Code, "Claims"), liens (as defined in Section 101(37) of the Bankruptcy Code, "Liens"), encumbrances and all other interests (collectively including each of the foregoing, "Interests"), including, but not limited to: (1) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors'

131655.01602/21805257v.4

interest in the Clinton Assets or any similar rights, including rights under section 365(h) of the Bankruptcy Code; (2) those relating to taxes arising under or out of in connection with, or in any way relating to the operation of the Clinton Assets prior to the Closing; and (3) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (b) all debts arising in any way in connection with any agreements, acts or failures to act of any of the Debtors or any of the Debtors' predecessors or affiliates, Claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law.

R. The Clinton Purchaser is assuming only the Assumed Liabilities, as defined and set forth in the Clinton Asset Purchase Agreement, and is not assuming any obligations other than the Assumed Liabilities.

S. Given all of the circumstances of the Debtors' chapter 11 cases and the adequacy and fair value of the Purchase Price and the assumption by the Clinton Purchaser of the Assumed Liabilities under the Clinton Asset Purchase Agreement, the proposed Sale of the Clinton Assets to the Clinton Purchaser under the Clinton Asset Purchase Agreement constitutes a reasonable

and fair exchange of consideration and reasonable and sound exercise of the Debtors' business judgment, and should be approved.

T.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing are incorporated herein.

U.  Time is of the essence in consummating the Sale. In order to maximize the value of the Clinton Assets, it is essential that the Sale occur promptly, and within the time constraints set forth in the Clinton Asset Purchase Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004.

## II.  DECRETAL PROVISIONS

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1.  Except to the extent that relief was previously granted by the Procedures Order, the Sale Motion is GRANTED, as further described herein.

2.  All objections to the Sale Motion have either been resolved or are OVERRULED.

### Approval of the Clinton Asset Purchase Agreement

3.  The Clinton Asset Purchase Agreement and all of the terms and conditions thereof, are hereby approved.

4.  The sale to the Clinton Purchaser is approved pursuant to sections 105 and 363 of the Bankruptcy Code, and the Debtors and the Clinton Purchaser and their affiliates, officers, directors, employees and agents are authorized and directed to immediately take such actions as are necessary to consummate and implement the Clinton Asset Purchase Agreement. The terms and conditions of the Clinton Asset Purchase Agreement are hereby approved in all respects.

131655.01602/21805257v.4

5. The Debtors, as well as their affiliates (including, without limitation, Holding Seneca SIP and Seneca SIP), officers, directors, employees and agents, are authorized and directed to execute and deliver the Clinton Asset Purchase Agreement, together with all additional agreements, instruments and documents that may be reasonably necessary or desirable to implement the Clinton Asset Purchase Agreement and effectuate the provisions of this Sale Order and the transactions approved hereby, all without further Order of the Court. Additionally, pursuant to section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized and empowered to fully assume, perform under, consummate, and implement the Clinton Asset Purchase Agreement, together with such additional agreements, instruments and documents that may be reasonably necessary or desirable to implement the Clinton Asset Purchase Agreement, and to take all further actions as may reasonably be requested by the Clinton Purchaser for the purpose of selling, assigning, transferring, granting, conveying, conferring and delivering to the Clinton Purchaser, or transferring to the Clinton Purchaser's possession, any or all of the Clinton Assets and the Clinton Subject Contracts, or as may be necessary or appropriate to the performance of the obligations, and make effective the transactions contemplated by the Clinton Asset Purchase Agreement, all without further Order of this Court.

### Transfer of the Clinton Assets

6. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to transfer or to cause the transfer of the Clinton Assets in accordance with the terms of the Clinton Asset Purchase Agreement. Except for the Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Clinton Assets shall be transferred to Clinton Purchaser, and upon the Closing shall be, free and clear of all Interests of any kind or nature whatsoever (including, but not limited to, those described in Recital Q of this Order), and all such Interests of any kind or nature whatsoever shall attach to the net cash proceeds of the

transactions in the order of their priority, with the same validity, force and effect that they now have as against the Clinton Assets, subject to any claims and defenses the Debtors may possess with respect thereto that were not previously waived.

7. All persons or entities holding Liens, Claims, encumbrances or Interests of any kind or nature with respect to the Clinton Assets are hereby barred from asserting such liens, claims, encumbrances or interests of any kind or nature against the Clinton Purchaser, its successors or assigns, or the Clinton Assets. This Sale Order is and shall be effective as a determination that all Liens, Claims, encumbrances, and Interests shall be and are, without further action by any person or entity, released with respect to the Clinton Assets as of the Closing.

8. Except as expressly permitted otherwise by this Sale Order, all persons and entities, including, but not limited to, all debt security holders; equity security holders; governmental, tax and regulatory authorities; lenders; trade creditors; and other creditors holding Interests of any kind or nature whatsoever against or in the Debtors or the Clinton Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtors, the Clinton Assets, the operation of the Clinton Assets prior to the Closing or the transactions are forever barred, estopped and permanently enjoined from asserting against the Clinton Purchaser, its successors or assigns, their property or the Clinton Assets such persons' or entities' Interests.

## Additional Provisions

9. The Clinton Purchaser shall have no liability or responsibility for any liabilities or other obligations of the Debtors arising under or related to the Sale Assets, except as set forth in the Clinton Asset Purchase Agreement. Without limiting the generality of the foregoing, except

-11-

131655.01602/21805257v.4

as set forth in the Clinton Asset Purchase Agreement, the Clinton Purchaser shall not be liable for: (i) any fixed, unliquidated or contingent claims against the Debtors or any of its predecessors or affiliates, whether based upon successor or vicarious liability or otherwise, and whether any of such items are known or unknown as of the Closing; (ii) any violation or alleged violation of any environmental laws; or (iii) liabilities under any pension, ERISA, tax, employment, labor, employment or antidiscrimination laws or regulations, any products liability law, or any other liability related to the Debtors or the Excluded Assets.

10. On and after the Closing, each of the Debtors' creditors asserting a lien in any of the Clinton Assets is authorized and directed to execute such documents and take all other actions as may be necessary to release its liens on or against the Clinton Assets being transferred pursuant to the Clinton Asset Purchase Agreement, as such liens may have been recorded or otherwise exist; provided that the failure of any such creditors to comply with the provisions of this paragraph shall in no way limit the release, discharge and termination of any such lien against the Clinton Assets purchased as otherwise provided by this Sale Order.

11. If any person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens, or other documents or agreements evidencing claims against or in the Debtors or the Clinton Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Clinton Assets or otherwise, then (at the Closing) only with regard to the Clinton Assets being acquired by the Clinton Purchaser pursuant to the Clinton Asset Purchase Agreement, the Clinton Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order (and file any UCC-3 termination statements), which, once filed, registered or otherwise

recorded, shall constitute conclusive evidence of the release of all claims against the Clinton Assets other than the Assumed Liabilities. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

12. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and provisions of the Clinton Asset Purchase Agreement and the provisions of this Sale Order.

13. Each and every federal, state and local government agency or department and all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds and other similar persons are hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Clinton Asset Purchase Agreement and this Sale Order.

14. All persons or entities that are presently, or on the Closing Date may be, in possession of some or all of the Clinton Assets are hereby directed to surrender possession of the Clinton Assets to the Clinton Purchaser on the Closing Date.

15. Article 6 of the Uniform Commercial Code governing Bulk Sale Transfers and comparable state statutes are not applicable to the sale of the Clinton Assets to the Clinton Purchaser.

16. This Court retains jurisdiction to (a) enforce and implement the terms and provisions of the Clinton Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith; (b) compel delivery of the Clinton Assets to the Clinton Purchaser, (c) compel delivery of the Purchase Price; (d) compel specific performance of the Debtors' and the Clinton Purchaser's obligations

under the Clinton Asset Purchase Agreement; (e) resolve any disputes arising under or related to the Clinton Asset Purchase Agreement; (f) interpret, implement and enforce the provisions of this Sale Order; (g) determine any disputes relating to or concerning the receipt, use, application or retention of the proceeds from the sale of the Clinton Assets; (h) determine all disputes concerning any alleged liens, claims, encumbrances, and interests on the Clinton Assets, including the extent, validity, enforceability, priority, and nature of all such alleged liens, claims, encumbrances, and interests subject to other Orders of this Court; and (i) adjudicate any and all issues relating to the Clinton Assets.

17. Nothing contained in any plan of reorganization or liquidation confirmed in these bankruptcy cases or the order of confirmation confirming such plan shall conflict with or contradict the provisions of the Clinton Asset Purchase Agreement or this Sale Order. To the extent that any provision of this Sale Order is inconsistent with the provisions of the Clinton Asset Purchase Agreement, any prior order, or any pleading with respect to the motions in these cases, the terms of this Sale Order control.

18. The Clinton Purchaser is deemed a buyer in good faith of the Clinton Assets and thus entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, in the event that this Order is modified on appeal or reversed.

19. The transactions contemplated by the Clinton Asset Purchase Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

20. The terms and provisions of the Clinton Asset Purchase Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Debtors' estates and the Debtors' creditors, the Clinton Purchaser and its affiliates, successors and assigns, and any affected third parties and persons or

131655.01602/21805257v.4

entities asserting a claim against or interest in or lien on the Debtors' estates or any of the Clinton Assets to be sold to the Clinton Purchaser pursuant to the Clinton Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee for any of the Debtors under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all respects.

21. The Clinton Asset Purchase Agreement may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material and notice of such modification, amendment or supplement is provided to West, the Indenture Trustee and the Committee by counsel.

22. The Debtors and the Clinton Purchaser are hereby authorized and directed to take all actions reasonably necessary to effectuate the terms of the Clinton Asset Purchase Agreement, the transactions contemplated thereunder and the provisions of this Sale Order, all without the necessity of any further order of the Bankruptcy Court.

23. The provisions of Bankruptcy Rule 6004(h) shall not apply to stay consummation of the sale of the Clinton Assets to the Clinton Purchaser under the Clinton Asset Purchase Agreement, as contemplated in the Sale Motion and approved by this Sale Order, and the Debtors and the Clinton Purchaser are hereby authorized to consummate the transactions contemplated and approved herein immediately upon entry of this Sale Order.

24. Any appeal seeking to enjoin or stay consummation of the Sale (the "Appeal") shall be subject to the appellant depositing or posting a bond in an amount equal to the then aggregate purchase price, and applicable damages, pending the outcome of the Appeal.

131655.01602/21805257v.4

25. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Clinton Asset Purchase Agreement, all modifications thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith.

26. The failure specifically to include any particular provisions of the Clinton Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Clinton Asset Purchase Agreement is hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Sale Order.

27. This Sale Order and the Clinton Asset Purchase Agreement: (a) shall be binding in all respects upon all creditors of and holders of equity interests in any Debtors (whether known or unknown), any holders of Interests, all non-Debtors parties to the Subject Contracts, the Clinton Purchaser and all successors and assigns of the Clinton Purchaser, the Debtors and their affiliates including, without limitation, Holding Seneca SIP and Seneca SIP, the Clinton Assets, the Clinton Subject Contracts and any subsequent trustees appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code; and (b) shall not be subject to rejection. Nothing contained in any chapter 11 plan of reorganization or liquidation confirmed in these bankruptcy cases or in any related confirmation order, disclosure statement, or order approving disclosure statement shall conflict with or derogate from the provisions of this Sale Order and the Clinton Asset Purchase Agreement, this Sale Order and the transactions being in

contemplation of, in furtherance of and in connection with such chapter 11 plan.

Dated: September 25, 2009

_____
HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE