IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NOVA HOLDING CLINTON COUNTY, LLC, *et al.*,[1] | : | Case No. 09-11081 (KG) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

Hearing Date: February 18, 2010 at 11:00 a.m. (Requested)
Objection Deadline: At hearing (Requested)

## DEBTORS' SECOND EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING ENTRY INTO NINTH AMENDMENT TO THE DEBTOR IN POSSESSION CREDIT AGREEMENT

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or "Nova") hereby move (the "Motion")[2] this Court, pursuant to section 364(c) and (d) of title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (the "Bankruptcy Code" and Fed. R. Bankr. P. ("Bankruptcy Rules") 2002, 4001 and 9014, for entry of an order authorizing the Debtors' entry into the Ninth Amendment to the Debtor-in-Possession Credit Agreement (the "Ninth DIP Amendment"). A copy of the proposed order (the "Ninth DIP Amendment Order") is attached hereto as Exhibit A and a copy of the Ninth DIP Amendment is attached hereto as Exhibit B. In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Nova Holding Clinton County, LLC ("Holding Clinton"), a Delaware limited liability company (9944); Nova Biofuels Clinton County, LLC ("Clinton"), a Delaware limited liability company (9809); Nova Holding Seneca, LLC ("Holding Seneca"), a Delaware limited liability company (9237); Nova Seneca, LLC ("Seneca"), a Delaware limited liability company (9222); Nova Holding Trade Group, LLC ("Holding Trade Group"), a Delaware limited liability company (9278); Nova Biofuels Trade Group, LLC ("Biofuels Trade Group"), a Delaware limited liability company (9269); NBF Operations, LLC ("NBF"), a Delaware limited liability company (8450); Nova Biosource Technologies, LLC ("Technologies"), a Texas limited liability company (4403); Biosource America, Inc. ("Biosource America"), a Texas corporation (7542); and Nova Biosource Fuels, Inc. ("Biosource Fuels"), a Nevada corporation (8450).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order (defined below).

131655.01602/21855356v.3

## JURISDICTION

1.  The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 364(c) and (d).

## BACKGROUND

3.  On March 30, 2009 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases (the "Chapter 11 Cases") are being jointly administered.

4.  An Official Committee (the "Committee") of Unsecured Creditors of the Debtors was appointed in these Chapter 11 Cases by the United States Trustee on April 15, 2009. [Dkt. No. 44]. Its members are: (i) Highbridge International LLC; (ii) DePue Mechanical, Inc.; (iii) The Bank of New York Mellon Trust Company, N.A., (iv) Lipid Logistics, LLC, and (v) Veolia Environmental Services, Industrial Service ("Veolia"). Veolia has since resigned from the Committee. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

## DEBTORS' DIP CREDIT FACILITY

5.  On June 24, 2009, this court entered a final order (the "Final DIP Order") that authorized Seneca, Biosource Fuels, Biosource America, Technologies, Clinton and Biofuels Trade to obtain post-petition financing from WestLB AG, New York Branch ("WestLB"), up to an aggregate amount of $2,030,000 (the "DIP Facility") pursuant to a debtor in possession

financing agreement (the "DIP Agreement") guaranteed by Holding Seneca, NBF, Holding Trade and Holding Clinton [Docket No. 143].

6. The Debtors and WestLB filed stipulations extending certain dates set forth in the Final DIP Order and otherwise modifying the provisions of Final DIP Order on July 2, 2009 [Docket No. 152] (the "First Stipulation"), July 9, 2009 [Docket No. 157] (the "Second Stipulation"), July 17, 2009 [Docket No. 170] (the "Third Stipulation"), August 26, 2009 [Docket No. 210] (the "Fourth Stipulation"), September 30, 2009 [Docket No. 247] (the "Fifth Stipulation"); October 30, 2009 [Docket No. 278] (the "Sixth Stipulation"); November 11, 2009 [Docket No. 279] (the "Seventh Stipulation"); November 23, 2009 [Docket No. 299] (the "Eighth Stipulation"); December 17, 2009 [Docket No. 321] (the "Ninth Stipulation"); January 17, 2010 [Docket No. 343] (the "Tenth Stipulation"); January 29, 2010 [Docket No. 356] (the "Eleventh Stipulation"). The Eleventh Stipulation extended the maturity date of the DIP Facility to February 22, 2010.

7. On September 29, 2009, the Debtors and WestLB entered into that certain First Amendment to the Debtor-in-Possession Credit Agreement which amended certain provisions of the DIP Agreement that are also set forth in the Fifth Stipulation. The DIP Agreement has been amended a total of eight times; in each case the amendments conform to the Final DIP Order as modified by the then current stipulation. This Motion seeks approval of the Ninth DIP Amendment.

8. Unlike the stipulations and amendments that were entered into between the parties without the need for additional authority from this Court pursuant to Paragraph 63 of the Final DIP Order, the Debtors sought and received authority from the Court to enter into the Second Amendment to the Debtor-in-Possession Credit Agreement (the "Second DIP Amendment"). The Second DIP Amendment: (i) increased the Aggregate Commitment (as defined in the DIP

3

Agreement) to $2,600,000; and (ii) extended the Maturity Date (as defined in the DIP Agreement). On October 14, 2009, the Court entered an order approving the Second DIP Amendment Motion (the "Second DIP Amendment Order") [Docket No. 256]. The current Ninth DIP Amendment seeks to increase the Aggregate Commitment (as defined in the DIP Agreement) by $800,000 for a total Aggregate Commitment of $3,400,000 and authorizes the use of WestLB's Cash Collateral through April 2, 2010.

## RECENT AMENDMENTS TO THE DIP CREDIT FACILITY

9. Since September 2009 the DIP Facility has been amended to facilitate the closing of the sale of substantially all of Seneca's and Technologies' assets to Seneca Landlord, LLC, f/k/a REG Seneca, LLC ("REG Seneca"), in consideration for, among other things, the assumption of approximately $36,250,000 of the secured obligations owed to WestLB, including all of the outstanding DIP Obligations. The order approving the sale was entered on September 29, 2009 [Docket No. 245] following an auction conducted by the Debtors pursuant to Section 363 of the Bankruptcy Code.

10. Seneca, Technologies, WestLB and REG Seneca, have invested substantial time, resources and effort to close the sale to REG Seneca (the "Sale") under extremely challenging circumstances. The Debtors believe that it is likely that the Sale will ultimately close and REG Seneca will assume the obligations under the DIP Agreement by no later than February 22, 2010. To ensure that the closing will occur and to facilitate a fair, value-optimizing resolution of these Chapter 11 Cases, the Debtors and WestLB have negotiated the terms of the proposed order and the Ninth DIP Amendment that will become effective upon the entry of the order approving this Motion. The proposed order provides for:

    (a)    The Aggregate Commitment (as defined in the DIP Agreement) to be increased by $800,000 for a total Aggregate Commitment of $3,400,000.

4

(b) Continued authority to use Cash Collateral solely in accordance with the Wind-Down Budget, which is attached hereto as <u>Exhibit C</u>,through April 2, 2010.

(c) The Final DIP Order and Interim Cash Collateral Orders to remain in full force and effect notwithstanding the assumption of all of the DIP Obligations by REG Seneca concurrently with the closing of the Sale.

(d) The transfer of certain payments and reimbursements received by the Debtors to WestLB in a capped amount identified in the Wind-Down Budget to be held in a segregated account in WestLB's name and the authorization for WestLB to apply such funds prior to or upon the occurrence of the Maturity Date in WestLB's sole and absolute discretion.

(e) The removal of all provisions related to the "Carve-Out" from the Final DIP Order in consideration for the payment of professional fees to the Debtors' and Committee's professionals throughout these Chapter 11 Cases, establishment of a reserve in escrow with a Debtor designee sufficient to pay any fee holdbacks, fees, expenses and costs if subsequently allowed, and the provision of additional budgeted fees and expenses in the Wind-Down Budget sufficient to pay the Debtors' and Committee's professionals' fees and expenses through April 2, 2010.

## RELIEF REQUESTED

11. The Debtors seek entry of the Ninth DIP Amendment Order authorizing the Debtors to enter into the Ninth DIP Amendment which amends the relevant provisions of the Debtor-in-Possession Credit Agreement pursuant to Bankruptcy Code sections 364(c) and (d) and Bankruptcy Rules 2002, 4001 and 9014.

## BASIS FOR RELIEF REQUESTED

12. The Debtors seek this Court's entry of the Ninth DIP Amendment Order, which in turn authorizes the Debtors to enter into the Ninth DIP Amendment attached hereto as <u>Exhibit B</u> and authorizes the Debtors' use of Cash Collateral pursuant to the Wind-Down Budget attached hereto as <u>Exhibit C</u>.

13. The proposed order and the Ninth DIP Amendment provide for an increase of $800,000 in the Aggregate Commitment under the DIP Facility for a total Aggregate Commitment of $3,400,000. This increase in the Aggregate Commitment will provide the

5

Debtors' estates with the additional liquidity necessary to close the Sale and maintain administrative solvency for the duration of the budgeted wind-down period for the Chapter 11 Cases. The increase in the Aggregate Commitment is primarily necessary to fund the Debtors' cash shortfall caused by the delay in the expected receipt by the estate of payments under a business interruption insurance policy ($636,500) and the receipt of certain insurance and natural gas refunds (approximately $70,000).[3] The Debtors propose to bridge the liquidity problems resulting in a cash shortfall in the Wind-Down Budget (attached hereto as Exhibit C) created by the lag in timing between the closing of the Sale, expected to occur on or before February 22, 2010, and the receipt of the payments and refunds due to the Debtors, expected to be subsequently received on or before March 19, 2010, by borrowing additional funds from WestLB under the DIP Facility prior to the closing of the Sale pursuant to the Ninth DIP Amendment.

14. Pursuant to the order approving the Sale, REG Seneca, upon closing, will assume the entirety of the DIP Facility, including the additional borrowings authorized by the order approving this Motion. Although the closing of the Sale is expected to occur on or before February 22, 2010, the Wind-Down Budget anticipates that the Debtors will need to continue to utilize WestLB's Cash Collateral (including the proceeds of the DIP Facility) to fund the Debtors' and the Committee's wind-down of the Debtors' cases from the closing of the Sale to a date no later than April 2, 2010. The Wind-Down Budget in conjunction with the Final DIP Order (as amended) and the Cash Collateral Orders, which shall remain in full force and effect as provided in the proposed order, will enable the Debtors to continue to utilize WestLB's Cash Collateral while assuring WestLB the timely recovery of all of its Cash Collateral not allocated

---

[3] The expected payments and reimbursements are encumbered by security interests in favor of WestLB in its capacity as the lender under both the DIP Facility and the Prepetition Credit Agreement.

6

to specific line items in the Wind-Down Budget upon payment to the estate of the anticipated insurance payments and insurance and gas refunds.

15. The timing of this emergency motion is necessitated by the impending closing of the Sale and the Debtors' recent conclusion that the costs associated with closing the Sale and winding-down their Cases would result in a cash shortfall under the Wind-Down Budget due to the delay in the estates' receipt of the expected business interruption insurance payment, which is not likely to be received prior to the closing of the Sale. WestLB has consented to the relief sought in the Motion. The Debtors expect that the Committee will consent to the relief requested in this Motion, including, without limitation, the removal of carveout provisions in the Final DIP Order described above in this Motion at paragraph 10(e).[4]

16. Approval of the proposed order and the Ninth DIP Amendment is critical to the Debtors' ability to satisfy their requirements associated with closing the Sale. The relief sought in this Motion is fair, reasonable, and in the best interest of the Debtors' creditors. Increasing the amount of the DIP Facility immediately prior to its assumption in full will enable the Debtors to finance their budgeted administrative liabilities, close the Sale and provide for the orderly wind-down of the Chapter 11 Cases.

17. Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under Bankruptcy Code section 503(b)(1), the Bankruptcy Court may authorize a debtor to obtain credit or incur debt: (i) with priority over any and all administrative expenses as specified in Bankruptcy Code sections 503(b) or 507(b), (ii) secured by a lien on property of the estate that is

---

[4] The Wind-Down Budget and the Ninth DIP Amendment Order assume that the Committee consents to the removal of carveout provisions in the Final DIP Order (relevantly, paragraph 45 of the Final DIP Order provides for a maximum $50,000 post-Carve-Out Date carveout for the Committee's professionals). If Committee consent to the relief specified in paragraph 10 of the Ninth DIP Amendment Order is not obtained, then the "Proposed UCC Payment" identified in the Wind-Down Budget will be calculated net of and be reduced by any amounts payable after the Carve-Out Date on account of the Committee's carveout and the form of the Ninth DIP Amendment Order will be modified accordingly in form and substance acceptable to the Debtors and

7
131655.01602/21855356v.3

not otherwise subject to a lien, or (iii) secured by a junior lien on property of the estate that is subject to a lien. *11 U.S.C. § 364*. Bankruptcy Code section 364(d) allows a debtor to obtain credit secured by a senior or equal lien on property of the estate that is subject to a lien, provided that: (x) the debtor is unable to obtain such credit otherwise, and (y) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. *11 U.S.C. § 364(d)*.

18. The Debtors negotiated the Ninth DIP Amendment with WestLB in good faith at arms-length, having determined that the additional proposed DIP financing (to be assumed in full by REG Seneca) is necessary to enable closing of the Sale and the orderly resolution of these Chapter 11 Cases and that such financing is only available under Bankruptcy Code sections 364(c) and (d) and only from WestLB. Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying the Bankruptcy Code, bankruptcy courts grant a debtor considerable deference in acting in accordance therewith. *See, e.g., Bray v. Shenandoah Fed. Say. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."). *See also In re Funding Sys. Asset Mgmt. Corp.,* 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.,* 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo. 1985).

19. Substantially all of the Debtors' assets are encumbered by WestLB and the Debtors will not be able to procure funding for the required Sale closing costs or the orderly
WestLB and submitted to the Court.

wind-down of these cases from any source other than WestLB. The Debtors have negotiated the best terms available (which terms are consistent with the existing DIP Facility) to obtain the funding they need to maintain sufficient liquidity to preserve their assets and administer their estates through the rest of these Chapter 11 Cases and potentially provide a recovery to general unsecured creditors out of WestLB's Cash Collateral. The Debtors submit that the circumstances of these cases require the Debtors to obtain emergency financing under Bankruptcy Code sections 364(c) and (d), and accordingly, the Ninth DIP Amendment reflects the exercise of their sound business judgment.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

20. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

21. In light of the foregoing, it is in the best interest of the Debtors' estates to enter into the Ninth DIP Amendment and, accordingly, this Court's approval is warranted.

## NOTICE

22. Notice of this Motion will be given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Indenture Trustee; (iii) counsel to WestLB; (iv) counsel to the Committee; (v) counsel for Sterling Bank; (vi) counsel to REG Seneca and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

23. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Ninth DIP Amendment Order, substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion and such other and further relief as may be just, proper and necessary.

Dated: February 16, 2010                **BLANK ROME LLP**

*/s/ David W. Carickhoff*
David W. Carickhoff (DE No. 3715)
Stanley B. Tarr
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 425-6400
Facsimile:     (302) 425-6464

    and

Michael B. Schaedle
Erin O'Brien Harkiewicz
One Logan Square
Philadelphia, PA 19103
Telephone:   (215) 569-5500
Facsimile:     (215) 569-5555

Counsel for Nova Holding Clinton County, LLC
and Affiliated Debtors and Debtors in Possession

10
131655.01602/21855356v.3