| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NOVA HOLDING CLINTON COUNTY, LLC, *et al.*,[1] | : | Case No. 09-11081 (KG) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

Objection Deadline: March 26, 2010 @ 4:00 p.m. (ET)
Hearing Date: March 31, 2010 @ 9:00 a.m. (ET)

## DEBTORS' MOTION FOR ENTRY OF AN ORDER DISMISSING CHAPTER 11 CASES, APPROVING MECHANISM FOR DISTRIBUTION OF WESTLB'S CARVEOUT AMOUNTS, AND FOR RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 349, AND 1112(b) AND BANKRUPTCY RULE 9019

Nova Holding Clinton County, LLC and its affiliated debtors (collectively, the "Debtors" or "Nova"), debtors and debtors in possession in the above-captioned cases, hereby move (this "Motion") this Court for entry of an order, substantially in the form attached hereto, (i) dismissing the Debtors' chapter 11 cases; (ii) approving distribution of WestLB's carveout amount; and (iii) granting related relief, pursuant to sections 105(a), 349 and 1112(b) of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

Since the commencement of their chapter 11 cases, the Debtors have worked to maximize value for all stakeholders in what has proven to be a very difficult market. Having run a sale

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Nova Holding Clinton County, LLC (9944); Nova Biofuels Clinton County, LLC (9809); Nova Holding Seneca, LLC (9237); Nova Biofuels Seneca, LLC (9222); Nova Holding Trade Group, LLC (9278); Nova Biofuels Trade Group, LLC (9269); NBF Operations, LLC (8450); Nova Biosource Technologies, LLC (4403); Biosource America, Inc. (7542); and Nova Biosource Fuels, Inc. (8450).

process in excess of six months, which is substantially longer than the typical sale processes that this Court often sees, largely due to the support of these cases and the sale process by WestLB AG, New York Branch ("WestLB"), the chapter 11 cases have yielded elements of a collective remedy.

The principal assets of Nova Biofuels Clinton County, LLC ("Clinton"), which were the collateral of Bank of New York Mellon Trust & Securities Company, N.A., as indenture trustee (the "Indenture Trustee") of certain 10% convertible senior secured notes (the "Notes") and WestLB as post-petition lender, have been liquidated. The principal assets of Nova Biofuels Seneca, LLC ("Seneca") and Nova Biosource Technologies, LLC ("Technologies"), which consist primarily of the Seneca refinery and intellectual property, are collateral for WestLB's pre- and post-petition claims.

Upon closing of the sale of the assets of Seneca and Technologies, such assets will have been liquidated and the estates' obligations to WestLB will be reduced by approximately $36 million. Administrative expenses and valid priority claims, primarily real property tax claims, have been or will be satisfied in the course of the closings of the Clinton and Seneca facilities. Now, pursuant to this Motion, the Debtors, with the support of WestLB, propose a controlled dismissal of all of the Debtors' chapter 11 cases. The controlled dismissal will facilitate the distribution of the WestLB cash collateral carveout in the amount of $200,000 for the benefit of general unsecured creditors and promote an efficient and fair resolution of these cases.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are sections 105(a), 349, and 1112(b) of the Bankruptcy Code and Rules 2002 and 9019 of the Bankruptcy Rules.

## BACKGROUND

3. On March 30, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered as captioned above for procedural purposes. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

4. On April 14, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee (the "Committee") of Unsecured Creditors of the Debtors.[2] No request has been made for the appointment of a trustee or examiner. The Committee is considering the relief sought in the Motion and has commented on same to the Debtors and WestLB. The Debtors hope that the Committee's consent to the relief sought herein will be obtained in the near term.

5. A thorough description of the Debtors' business, capital structure, and the events leading up to the Petition Date are set forth in the *Declaration of Kenneth T. Hern in Support of Chapter 11 Petitions and First Day Relief* (the "Hern Declaration"), filed on March 30, 2009 [Dkt. No. 3].

**The Debtors' Business**

6. Prior to the Petition Date, Nova was an energy company that refined and marketed ASTM D6751 quality biodiesel and related co-products from a variety of feedstocks through the deployment of its proprietary patented process technology, which enables the use of

---

[2] The Notice of Appointment of the Committee was filed on April 15, 2009 [Dkt. No. 44].

a broader range of lower cost feedstocks. Biodiesel is a clean burning, biodegradable and renewable fuel made from a variety of feedstocks, such as animal-derived fats, oils and greases and vegetable-based oils. Biodiesel is typically blended with petroleum diesel to create a biodiesel blend that is nearly indistinguishable from, and in some respects superior to, 100% petroleum diesel.

7. Prior to the Petition Date, the Debtors had three main operating entities: Seneca, Clinton, and Biosource America, Inc. Nova Holding Seneca, LLC ("<u>Holding Seneca</u>") holds 100% of the member interests of Seneca. Nova Holding Clinton County, LLC ("<u>Holding Clinton</u>") holds 100% of the member interests of Clinton. NBF Operations, LLC holds 100% of the member interests of Biosource America.

8. Seneca presently owns the Seneca, Illinois refinery – the Debtors' flagship refinery. Clinton owned the Clinton County, Iowa refinery. Biosource America provided engineering, procurement and construction services to third parties, as well as to Clinton and Seneca when appropriate and necessary.

**The Sale Process**

9. On July 31, 2009, the Debtors filed the *Motion Of Debtors For Entry Of Orders Under 11 U.S.C. §§ 105(a), 363, 365 And 503 And Federal Rules Of Bankruptcy Procedure 2002, 6004, 6006 And 9014 (I) (A) Approving Bidding And Auction Procedures For The Sale Of All Assets Of The Debtors; (B) Approving Bidding Incentives For Clinton County Bio Energy, LLC, The Clinton Stalking Horse Bidder; (C) Approving Notice Procedures For The Solicitation Of Bids, An Auction, And The Assumption And Assignment Of Executory Contracts And Unexpired Leases; And (D) Scheduling An Auction For The Sale Or Sales Of All Or Substantially All Of Debtors' Assets; (II) Approving The Sale Or Sales Of All Or Substantially All Of The Debtors' Assets, Including, Without Limitation, To The Clinton Stalking Horse*

*Bidder, And Approving The Assumption And Assignment Of Executory Contracts And Unexpired Leases; And (III) Granting Related Relief* [Dkt No. 181] (the "Sale Motion").

10. Pursuant to the Sale Motion, among other things, the Debtors sought the sale of substantially all of their assets. The Debtors' assets essentially fall into three categories: (i) the assets owned by Clinton which relate to the Clinton County, Iowa biodiesel refinery (the "Clinton Assets"); (ii) the assets owned by Seneca which relate to the Seneca, Illinois biodiesel refinery (the "Seneca Assets"); and (iii) the intellectual property owned by Technologies which concerns the Debtors' technology that enables them to convert various feedstocks into biodiesel and other co-products (the "Process Technology").

11. On September 23, 2009, this Court held a hearing concerning the Sale Motion and the approval of proposed sales (the "Sale Hearing"). At the Sale Hearing, the Court approved the Debtors' proposed sale of the Clinton Assets to Clinton Bio Energy LLC, subject to receipt of an appropriate order. At the Sale Hearing, the Court also approved the Debtors' proposed sale of the Seneca Assets and Process Technology to REG Seneca LLC, which is now known as Seneca Landlord, LLC ("REG Seneca"), subject to receipt of an appropriate order and asset purchase agreement.

12. On September 25, 2009, this Court entered an order (the "Clinton Sale Order") approving the sale of the Clinton Assets to Clinton Bio Energy LLC [Dkt No. 241]. The sale of the Clinton Assets to Clinton Bio Energy LLC closed on October 13, 2009, yielding $1.2 million in proceeds and causing the satisfaction of certain priority claims.

13. On September 29, 2009, the Court entered an order (the "Seneca Sale Order") approving the sale of the Seneca Assets and Process Technology to REG Seneca [Docket No. 245]. As of the date hereof, the sale of the Seneca Assets and Process Technology to REG Seneca has not yet closed.

14. The parties have worked diligently since the approval of the Seneca Sale Order to close the transaction in an extremely difficult economic environment and anticipate that the REG Seneca transaction will close on or before March 19, 2010. Throughout this time, WestLB has, in good faith, funded the ongoing administrative costs of these chapter 11 cases. Upon closing, the Sale will result in the assumption $36 million of WestLB secured indebtedness, including all outstanding obligations under the DIP Facility. The closing will also result in the satisfaction of approximately $400,000 in priority tax claims. As a result of the REG Seneca transaction, as many as fifteen Seneca employees will keep their jobs, eventually new hires should be made by REG Seneca and its affiliates and the Process Technology is expected to continue in productive commercial use at the Seneca facility.

**Funding of the Chapter 11 Cases**

15. The Debtors' chapter 11 cases have been funded primarily through WestLB's cash collateral and $3.4 million of WestLB debtor in possession financing ("DIP Financing"). Additional cash collateral usage has resulted from a compromise with the Indenture Trustee in the context of DIP Financing and later in these cases in the context of resolving a dispute concerning the Clinton sale proceeds. The Debtors have maintained their administrative solvency throughout these cases through the use of WestLB's cash collateral and through the DIP Financing. The use of both of these sources of financing are expected to allow the Debtors to remain administratively solvent through April 2, 2010.

16. The Debtors' ability to use cash collateral expires on April 2, 2010, under the existing final order regarding DIP Financing and use of cash collateral (as amended, the "Final DIP Order"). WestLB, having funded the administrative costs of the chapter 11 cases, including the anticipated closing costs of the REG Seneca transaction, does not intend to further fund the cases after April 2, 2010. As such, the Debtors will not be able to fund any additional

administrative expenses after that time and cannot carry out a plan of liquidation. Given their illiquidity, the Debtors have no alternative but to seek dismissal or conversion of their chapter 11 cases. For the reasons set forth more fully below, the Debtors submit that a controlled dismissal of their chapter 11 cases is in the best interests of their creditors and they have negotiated with all major creditor constituents on the terms of that dismissal.

**Proposed Terms of the Controlled Dismissal**

17. The Committee and WestLB, with the consent of the Debtors and the Indenture Trustee, have agreed that subject to, and conditioned upon, the closing of the Seneca transaction with REG Seneca, WestLB will consent to the carveout of its cash collateral in the amount of $200,000 plus any unused budgeted amounts for Committee professional fees, which amount will be contributed by the Committee to the Liquidating Trust (as defined below) for the benefit of general unsecured creditors (the "Creditor Distribution"). On or before March 31, 2010, the Committee shall establish a grantor liquidating trust (the "Liquidating Trust") to hold the Creditor Distribution and distribute it to the specified general unsecured creditors. The Committee will be the grantor of the Liquidating Trust. Wayne Weitz shall be the trustee ("Liquidating Trustee") for the Liquidating Trust. The $200,000 WestLB funded component of the Creditor Distribution shall be transferred into the Liquidating Trust no later than three (3) business days after the entry of the order accompanying this Motion on the docket of these chapter 11 cases.

18. The beneficiaries of the Liquidating Trust shall be each: (i) holder of a general unsecured non-priority (as priority is defined under applicable bankruptcy law) claim that is listed as an undisputed, unsecured, non-priority claim in any of the Debtors' schedules filed with the Court and (ii) holder of a general unsecured, non-priority claim that has timely filed a proof of claim in these chapter 11 cases and whose claim demonstrates a *prima facie* basis, in the

Liquidating Trustee's sole judgment and discretion, to the right to payment asserted by such proof of claim (collectively, the "Beneficiaries"). The Liquidating Trustee may identify the beneficial amount of the claim of any Beneficiary pursuant to and subject to the terms of the Liquidating Trust Agreement. Beneficiaries shall receive a pro rata share of the Creditor Distribution. WestLB and the Indenture Trustee shall not share in the Creditor Distribution on account of their respective deficiency claims. Furthermore, since the only asset being transferred to the Liquidating Trust is the Creditor Distribution, and no estate property, including without limitation, causes of action or estate claims[3], is being transferred or assigned to the Liquidating Trust, the Beneficiaries of the Liquidating Trust shall not include (i) WestLB, (ii) the Indenture Trustee, (iii) any Noteholder, in its capacity as a Noteholder, (iv) Lipid Logistics, LLC, or any of their respective predecessors, successors or affiliates. None of the persons listed in (i) through (iv) above shall have any interest in the Liquidating Trust or its assets, including any reversionary interest.

19. The Liquidating Trust shall be evidenced by and governed by a "Liquidating Trust Agreement", which shall be filed with the Court by 4:00 p.m. on March 25, 2010, three (3) full business days prior to the requested March 31, 2010 hearing on the Motion and shall be consistent with the basic terms relating to the Liquidating Trust, Beneficiaries and the Liquidating Trustee specified in this Motion.

20. After consenting to the Creditor Distribution and upon the Debtors making the Creditor Distribution, WestLB shall have no continuing obligations to the Liquidating Trust, the Debtors, the Committee or any other person associated with the Debtors' chapter 11 cases. In consideration of and in furtherance of the foregoing and the stipulations, releases,

---

[3] Possible estate causes of action and claims include, without limitation, avoidance actions, warranty actions or director and officer liability actions

indemnifications, findings of fact and conclusions of law contained in, or in connection with, the Final DIP Order, cash collateral orders and other relief granted in these chapter 11 cases, the Debtors, the Committee and the Liquidating Trust have consented to, and shall be bound by, the releases and exculpations set forth in the attached form of order.

21. The attached form of proposed order authorizes a controlled dismissal of the Debtors' chapter 11 cases. Once this Court enters an order, the dismissal of the Debtors' chapter 11 cases will become effective immediately upon, and conditioned upon, the last to occur of: (i) the closing of the sale of the Seneca Assets and Process Technology to REG Seneca; and (ii) the transfer of the Creditor Distribution to the Liquidating Trust and all remaining WestLB cash collateral, if any, to WestLB.

22. Within three (3) business days of the dismissal becoming effective, the Committee shall file a notice with the Court certifying that the Creditor Distribution has been made to the Liquidating Trust and specifying the time and date of the dismissal of all of the Debtors' chapter 11 cases. The notice filed by the Committee shall be immediately served upon the Debtors, WestLB, the Indenture Trustee, the Office of the United States Trustee, the Debtors' consolidated list of top 30 unsecured creditors, and any parties that have requested notice pursuant to Bankruptcy Rule 2002 – all via electronic mail or first class mail.

23. It is contemplated that the dismissal of the Debtors' chapter 11 cases will be subject to this Court's reservation of jurisdiction over Debtor and Committee professional fee applications. Final fee applications for Debtor/Committee professionals will be filed with the Court no later than May 31, 2010.

## RELIEF REQUESTED

24. By this Motion, the Debtors respectfully request the entry of an order, substantially in the form attached hereto, (i) dismissing the Debtors' chapter 11 cases; (ii) approving a mechanism to implement the Creditor Distribution; and (iii) granting related relief.

## BASIS FOR RELIEF REQUESTED

### A. Cause Exists to Dismiss the Chapter 11 Cases

25. Bankruptcy Code section 1112(b) provides as follows:

> (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that –
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time: and
>
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A) –
>
> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(1) and (2).[4]

26. Bankruptcy Code section 1112(b)(4)(A) provides that "cause" exists for dismissal (or conversion) where a debtor incurs "substantial *or* continuing loss to or diminution of the estate" *and* there is an "absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A). The Debtors can establish "cause" for dismissal under Bankruptcy Code section 1112(b)(4)(A) due to the Debtors' substantial *or* continuing losses *and* the absence of any reasonable likelihood of rehabilitation. The Court has broad discretion to use its equitable powers to dispose of a case through dismissal. H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5903; *see also In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating a court has broad discretion to dismiss a bankruptcy and that dismissal is appropriate where a debtor lacks the capacity to carry out a plan); *In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 1999 WL 587790 at *2 (Bankr. E.D. Pa. Aug. 3, 1999).

27. As set forth in the Hern Declaration, the Debtors suffered a liquidity crisis and faced other market challenges that resulted in the Debtors' mothballing the Seneca refinery and the Clinton refinery prior to the Petition Date. Hern Declaration, ¶¶ 15, 17, 58, 62 & 63. As of the Petition Date, the Debtors lacked liquidity and any operating revenue to adequately support their operations. In these chapter 11 cases, the Debtors have worked with WestLB and the Indenture Trustee to liquidate their respective collateral. The liquidation of their collateral was facilitated through the use of WestLB's cash collateral, the DIP Facility and the use of the proceeds from the sale of the Clinton Assets. Without any operating income the administrative costs of these estates has resulted in substantial and continuing multi-million dollar losses.

---

[4] *See also* 11 U.S.C. § 349 (specifying the effect of dismissal); 11 U.S.C. § 105(a) (authorizing the entry of orders to implement estate administration and fulfill bankruptcy law requirements); Fed. R. Bankr. P. 9019 (authorizing the approval of certain compromises).

These losses are expected to continue for as long as these chapter 11 cases remain open. Undeniably the Debtors are suffering both continued *and* substantial losses. *See*, *e.g.*, *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) ("Courts have held that a negative cash flow postpetition and an inability to pay current expenses satisfy the elements of § 1112(b)(1)" [now § 1112(b)(4)(A)]); *In re Route 202 Corp.*, 37 B.R. 367, 376 (Bankr. E.D. Pa. 1984) ("Obviously, if the debtor has negative cash flow after the entry of the order for relief in the chapter 11 case, the [elements of former § 1112(b)(1) are] satisfied").

28. The Debtors can also establish that there is no reasonable likelihood of "rehabilitation" under Bankruptcy Code section 1112(b)(4)(A). Courts hold that "rehabilitation," as distinguished from "reorganization," denotes a restoration of a viable business and does *not* include liquidation. *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."); *AdBrite*, 290 B.R. at 216 ("rehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include an orderly or complete liquidation. In this context, rehabilitation means to put back in good condition and reestablish on a sound basis. It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met.")

29. With the closing of the Seneca transaction the Debtors will have no operating assets. As part of these chapter 11 cases they will have liquidated all of their operating and intellectual property assets. After the closing substantially all of the Debtors' assets will have been sold and all of its remaining assets will be fully encumbered. The lack of any operating assets, let alone any substantial assets of any type, renders the Debtors unable to rehabilitate their businesses. Not only are the Debtors unable to rehabilitate themselves but they do not even have

the ability to carry out a liquidating plan without becoming administratively insolvent. As such, there is no reasonable likelihood of rehabilitation.

30. The Creditor Distribution and the funding of the Liquidating Trust represent the best way forward for general unsecured creditors. The majority of general unsecured creditors will receive a quick recovery from these cases, a recovery the Debtors believe is meaningful under the circumstances. The Creditor Distribution and the controlled dismissal of theses cases will enable the most fair and efficient resolution of these cases.

**Conversion Is Not Appropriate; A Controlled Dismissal is Preferable and Advised**

31. Whether a court dismisses or converts a debtor's case depends upon "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1); *see also In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995) *aff'd*, 200 B.R. 568 (E.D. Pa. 1996). As explained above, the Debtors cannot reorganize and cannot fund a liquidating plan. Dismissal is in the best interests of creditors due to WestLB's agreement, conditioned upon the closing of the Seneca transaction with REG Seneca, to carveout $200,000 of its cash collateral for the benefit of general unsecured creditors as described above.[5] WestLB has not agreed to fund any amounts for general unsecured creditors in the event the Debtors' cases are converted to chapter 7. In addition, because all of the Debtors' assets are currently encumbered and are not subject to surcharge, the Debtors' chapter 7 estates will not only be insolvent, but to the extent any value is made

---

[5] A secured creditor (or non-debtor funding party) may dispose of its property and collateral for the benefit of general unsecured creditors. *See Official Committee of Unsecured Creditors v. Stern (In re SPM Manufacturing Corp.)*, 984 F.2d 1305, 1313 (1st Cir. 1993); *In re TSIC, Inc.*, 393 B.Rr. 71, 77 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.RR. 291, 298-99 (Bankr. D. Del. 2006); *Official Committee of Unsecured Creditors, on behalf of Distributed Energy Systems Corp. v. Perseus Partners VII, L.P. (In re Distributed Energy Systems Corp.)*, Adv. Pro. 08-51120 (KG) [Dkt. No. 40] (Bankr. D. Del., May 19, 2009) (Memorandum Opinion, pp. 9-10, attached hereto as **Exhibit A**); *In re TallyGenicom LP, et al.*, Case No. 09-10266 (CSS) [Dkt. No. 218] (Bankr. D. Del., Mar. 12, 2009) (order at 6, ¶12, attached hereto as **Exhibit B**).

available to unsecured creditors, it will be subject to the administrative expenses associated with the chapter 7.

32. Chapter 7 administration would be extremely difficult in theses cases. There are no unencumbered assets available to fund the trustee's examination of possible avoidance and other actions, let alone fund the prosecution of same. Moreover, the Debtors are concerned that there are insufficient viable, collectible actions to create a meaningful or timely recovery for general creditors. There is a substantial risk that the only beneficiaries of a chapter 7 administration would be the trustee and his or her professionals.

33. WestLB, moreover, is not advocating conversion of these cases despite its likely assertion of senior claims in a chapter 7. Instead, WestLB has agreed, as described above, to a cash collateral carveout for the benefit of general unsecured creditors under the terms of this dismissal and expressly conditioned upon the closing the Seneca transaction to REG Seneca. Although this distribution is modest, in light of the estimated $17 million in allowable non-deficiency claims (out of approximately $72 million in filed claims), both the Debtors and the Committee believe that the recoveries for general unsecured creditors will be meaningful. *In re Clark*, 1995 WL 495951 at *5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993) (if conversion does not maximize value for the beneficiaries of the debtors' estate, than a remedy external to bankruptcy may be preferred). The Liquidating Trustee shall endeavor to review all filed claims as soon as is practicable.

34. Bankruptcy courts have, logically enough, looked to what creditors agree is in their best interests to shape their decision-making on the question of the relative merits of dismissal or conversion. *See In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 800-802 (E.D. Pa. 2000); *Mazzocone*, 183 B.R. at 411-12. Here, WestLB, the Debtors' senior secured creditor, and an entity with substantial unsecured claims, prefers a controlled dismissal

as set forth herein. The Indenture Trustee, the agent for the Noteholders, has informed the Debtors that the Indenture Trustee will not seek to share in the Creditor Distribution if it is delivered on the terms set forth herein.

35.   In sum, conversion of the Debtors' chapter 11 cases does not make sense. The dismissal of these cases and the negotiated carveout of $200,000 for the benefit of general unsecured creditors are preferable for all constituencies and furthers the collective desire to equitably resolve these cases. Dismissal will result in quick and certain recoveries for the Debtors' general unsecured creditors, and, in the view of the Debtors and the Committee, is in the best interests of creditors.

## CONCLUSION

36.   The Debtors ask this Court to approve the controlled dismissal of the Debtors' chapter 11 cases on the terms set forth in this Motion and in the accompanying form of order as being supported by demonstrated cause and being in the best interests of creditors.

## NOTICE

37.   Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to WestLB; (d) counsel to the Indenture Trustee; (e) parties that have requested notice pursuant to Bankruptcy Rule 2002; and (f) all known creditors of the Debtors. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary or required.

WHEREFORE, the Debtors respectfully requests the entry of an order, substantially in the form attached hereto, and granting such other and further relief as is just, proper and necessary.

Dated: March 12, 2010

**BLANK ROME LLP**

By: */s/ David W. Carickhoff*
David W. Carickhoff (No. 3715)
1201 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

Michael B. Schaedle
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Attorneys for Nova Holding Clinton County, LLC*
*and Affiliated Debtors and*
*Debtors in Possession*